UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20337-CR-ALTONAGA/GOODMAN

IN THE MATTER OF SEALED
CRIMINAL INDICTMENT

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

By: _____
SEAN T. MCLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY
Court ID No. A5501121
99 NE 4th Street, 8th Floor
Miami, FL 33132
Phone: (305) 961-9013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20337

18 U.S.C. § 241
18 U.S.C. § 242

CR-ALTONAGA

/GOODMAN

UNITED STATES OF AMERICA

v.

ANTWAN LENARD JOHNSON,

        Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. The Florida Department of Juvenile Justice (hereinafter "FDJJ") was a department within the State of Florida responsible for operating and overseeing detention centers for juvenile detainees throughout Florida, including the Southern District of Florida.

2. The Miami-Dade Regional Juvenile Detention Center (hereinafter "the JDC"), located at or near 3300 NW 27th Avenue, Miami, Florida, was a juvenile detention center operated by the FDJJ and incarcerated juvenile inmates in numerically assigned units (hereinafter "modules").

3. JDC modules, which secured approximately 20 juveniles at any given time, were comprised of a central common area containing a television, telephone, and chairs, and contained various inmate cells lined along the perimeter.

4. Upon arrival at the JDC, juveniles underwent an admissions and orientation process, which included medical screening, notice as to the JDC's rules and regulations and written acknowledgement that, among other misconduct, uncontrolled behavior, fighting, and any threat of physical violence on other juveniles was prohibited.

5. Juvenile detention officers at the JDC were employees of the State of Florida, and among other duties, were assigned, in pairs, to a designated module per each eight-hour work shift and pursuant to the JDC's Facility Operating Procedures and Florida Administrative Code Rules 63G-2.013-026, were responsible for directly supervising and providing a safe and secure environment for juveniles in their custody and care.

6. The work schedule for juvenile detention officers at the JDC was comprised of three (3) different eight-hour shifts: Alpha Shift was from approximately 7:00 a.m. to 3:00 pm.; Bravo Shift was from approximately 3:00 p.m. to 11:00 p.m.; and Charlie Shift was from approximately 11:00 p.m. to 7:00 a.m.

7. Pursuant to Chapter 1.09 of the JDC's Facility Operating Procedures, including Florida Administrative Code Rules 63G-2.013-026, juvenile detention officers were prohibited from: verbally abusing, demeaning, and otherwise humiliating juveniles; using profanity, threats, intimidation, humiliation, and inappropriate physical contact with juveniles; and soliciting personal relationships with juveniles, including engaging in casual, friendly, and personal interactions.

8. Pursuant to Chapters 2.06 and 5.03 of the JDC's Facility Operating Procedures, including Florida Administrative Code Rules 63G-2.013-026, juvenile detention officers were also prohibited from: administering group punishment and corporal punishment on juveniles;

hazing juveniles; cursing at juveniles; providing any juvenile and group of juveniles with authorization to impose disciplinary sanctions over another juvenile; and allowing any juvenile and group of juveniles to discipline and have authority over another juvenile.

9. On or about August 28, 2015, E.R., a seventeen (17) year-old male, arrived at the JDC and was assigned to Module 9 as a pre-trial detainee.

10. On or about August 30, 2015, Module 9 contained approximately twenty (20) male juveniles between fourteen (14) and eighteen (18) years of age, including E.R.

11. On or about August 30, 2015, **ANTWAN LENARD JOHNSON**, a juvenile detention officer at the JDC, was assigned to Module 9 for the Bravo Shift.

12. On or about August 31, 2015, E.R. was transported from the JDC to Holtz Children's Hospital in Miami, Florida, and at approximately 11:17 p.m. was pronounced deceased.

## COUNT ONE
## CONSPIRACY AGAINST RIGHTS
## 18 U.S.C. § 241

1. Paragraphs 1 through 12 of the General Allegations section are re-alleged and incorporated fully herein by reference.

2. Beginning on or about August 30, 2015, and continuing through on or about August 31, 2015, in Miami-Dade County, in the Southern District of Florida, the defendant,

**ANTWAN LENARD JOHNSON,**

acting under color of law, and with other persons known and unknown to the Grand Jury, willfully combined, conspired, and agreed to injure, oppress, threaten, and intimidate E.R. in the free exercise and enjoyment of a right, secured and protected by the Constitution and laws of the

United States, namely, the right secured to pretrial detainees by the Due Process Clause to be free from the use of unreasonable force by a person acting under color of law.

It is further alleged that the acts committed in violation of the offense resulted in E.R.'s death.

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendant, acting under color of law, and his co-conspirators to use unreasonable force, including through forcible assault, to injure, oppress, threaten, and intimidate E.R. in the free exercise and enjoyment of a right secured and protected by the Constitution and laws of the United States.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy, included, among other things, the following:

3. As commonly utilized by other juvenile detention officers at the JDC, **ANTWAN LENARD JOHNSON** operated a bounty system in order to help ensure obedience and officer respect. By and through this bounty system, **ANTWAN LENARD JOHNSON** caused, encouraged, and induced juvenile detainees, in exchange for rewards and privileges, to forcibly assault E.R. as a result of E.R.'s statements and behavior, including toward **ANTWAN LENARD JOHNSON**.

4. **ANTWAN LENARD JOHNSON** used coded language, such as "off my face," and non-verbal gestures, including "nods," to signal that he wanted the juveniles to attack E.R. **ANTWAN LENARD JOHNSON** provided, and caused to be provided, rewards and privileges to juveniles who participated in the officer-directed attack on E.R., which included, but were not

limited to, extra recreational time and snacks. Additionally, **ANTWAN LENARD JOHNSON** provided, and caused to be provided, snacks to juveniles who participated in the officer-directed attack on E.R. in their assigned cells, including on different days and shifts and with the assistance of other juvenile detention officers.

5. As a result of being aware, and at other times prior victims, of the bounty system at the JDC, juveniles knew that they would not be punished and disciplined by **ANTWAN LENARD JOHNSON**. Juveniles were also aware that failure to participate in the officer-directed attack on E.R. could result in being targeted for future bounties and other mistreatment at the JDC.

6. Based on E.R.'s statements and behavior during dinner at the JDC cafeteria, **ANTWAN LENARD JOHNSON** communicated, in words and gestures, to juveniles that he wanted them to forcibly assault E.R. Various juveniles agreed, including in words and gestures, to forcibly assault E.R. at **ANTWAN LENARD JOHNSON's** direction. **ANTWAN LENARD JOHNSON** also caused E.R. to fear for his immediate safety and stand away from the other juveniles prior to, and while returning, from the JDC cafeteria to Module 9.

7. **ANTWAN LENARD JOHNSON** directed juveniles to delay the attack on E.R. until they all returned to Module 9. Upon returning to and entering Module 9 with the juveniles, **ANTWAN LENARD JOHNSON** promptly walked toward and into a supply closet, which was away from his direct view of E.R. and the other juveniles. In and around this same time, a juvenile punched E.R. in the face as E.R. attempted to sit down in a chair. Numerous other juveniles immediately joined the attack and punched and kicked E.R., including while E.R. was lying on the ground.

8.  After E.R. was escorted out of Module 9 to the JDC medical department, **ANTWAN LENARD JOHNSON** caused the juveniles in Module 9, who had all been locked in their cells for approximately four (4) minutes, to be released from their cells in order to watch television as a reward and privilege. In and around this same time, **ANTWAN LENARD JOHNSON** also acknowledged and bumped fists together with the juvenile who initiated the attack on E.R. **ANTWAN LENARD JOHNSON** also later caused certain Module 9 juveniles to receive snacks as a reward and privilege for participating in the attack on E.R.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objectives, the following over acts, among others, were committed, and caused to be committed, in the Southern District of Florida:

1.  On or about August 30, 2015, **ANTWAN LENARD JOHNSON** communicated, in words and gestures, to juveniles that he wanted them to forcibly assault E.R.

2.  On or about August 30, 2015, at **ANTWAN LENARD JOHNSON's** direction, one or more juvenile co-conspirators forcibly assaulted E.R.

3.  On or about August 30, 2015, **ANTWAN LENARD JOHNSON** caused juveniles, including one or more juvenile co-conspirators, to be released from their cells as a reward and privilege for participating in the attack on E.R.

4.  On or about August 30, 2015, **ANTWAN LENARD JOHNSON** permitted juveniles, including one or more juvenile co-conspirators, to watch television as a reward and privilege for participating in the attack on E.R.

5.  On or about August 30, 2015, **ANTWAN LENARD JOHNSON** caused one or more juvenile co-conspirators to receive snacks as a reward and privilege for participating in the attack on E.R.

6.      On or about August 31, 2015, **ANTWAN LENARD JOHNSON** caused one or more juvenile co-conspirators to receive snacks as a reward and privilege for participating in the attack on E.R.

All in violation of Title 18, United States Code, Section 241.

## COUNT TWO
## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
## 18 U.S.C. § 242

1.      Paragraphs 1 through 12 of the General Allegations section are re-alleged and incorporated fully herein by reference.

2.      On or about August 30, 2015, in Miami-Dade County, in the Southern District of Florida, the defendant,

**ANTWAN LENARD JOHNSON,**

while acting under color of law, and while aiding and abetting others known and unknown to the Grand Jury, willfully deprived E.R. of a right, secured and protected by the Constitution and laws of the United States, namely, the right secured to pretrial detainees by the Due Process Clause to be free from the use of unreasonable force by a person acting under color of law, in violation of Title 18, United States Code, Sections 242 and 2.

It is further alleged that the offense resulted in bodily injury to E.R. and resulted in E.R.'s death.

A TRUE BILL

_____
BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

By: _____
SEAN MCLAUGHLIN
ASSISTANT U.S. ATTORNEY

JOHN M. GORE
ACTING ASSISTANT ATTORNEY GENERAL
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION

By: _____
SAMANTHA TREPEL
TRIAL ATTORNEY

- 8 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

ANTWAN LENARD JOHNSON,
       Defendant.
_____/

CASE NO. **18-20337**

CR-ALTONAGA

## CERTIFICATE OF TRIAL ATTORNEY

**Superseding Case Information:**

| | | |
|---|---|---|
| New Defendant(s) | Yes ___ | No ___ |
| Number of New Defendants | ___ | |
| Total number of counts | ___ | |

**Court Division:** (Select One)

- **X** Miami
- ___ FTL
- ___ Key West
- ___ WPB
- ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)  **No**
   List language and/or dialect _____

4. This case will take **11-20** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | | | |
   |---|---|---|
   | I | 0 to 5 days | ___ |
   | II | 6 to 10 days | ___ |
   | III | 11 to 20 days | **x** |
   | IV | 21 to 60 days | ___ |
   | V | 61 days and over | ___ |

   (Check only one)

   | | |
   |---|---|
   | Petty | ___ |
   | Minor | ___ |
   | Misdem. | ___ |
   | Felony | **x** |

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____

   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes **x** No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ___ Yes **x** No

_____
SEAN T. McLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY
Court No. A5501121

*Penalty Sheet(s) attached

REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>**ANTWAN LENARD JOHNSON**</u>

**Case No**: _____

Count #: 1

<u>Conspiracy Against Rights</u>

<u>Title 18, United States Code, Section 241</u>

<u>* **Max. Penalty**</u>:   Life Imprisonment

Count #: 2

<u>Deprivation of Rights Under Color of Law</u>

<u>Title 18, United States Code, Section 242</u>

<u>* **Max. Penalty**</u>:   Life Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**