UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **18-20337-CR-ALTONAGA**

**UNITED STATES OF AMERICA**

vs.

**ANTWAN LENARD JOHNSON,**

    **Defendant.**
_____/

**GOVERNMENT MOTION IN LIMINE SEEKING ADMISSION
OF CO-CONSPIRATOR STATEMENTS**

  The United States of America, through its undersigned attorneys, hereby files this motion *in limine* seeking admission of co-conspirator statements against defendant Johnson pursuant to Federal Rule of Evidence 801(d)(2)(e).[1]

**I. FACTUAL & PROCEDURAL SUMMARY**

  On or about August 28, 2015, E.R., a seventeen (17) year-old male, arrived at the Miami-Dade Regional Juvenile Detention Center (hereinafter "the JDC") and was assigned to Module 9 ("Mod 9") as a pre-trial detainee.[2] On August 30, 2015, Defendant Johnson, a JDC employee since 2007, was assigned to work the 3-11 p.m. shift in Mod 9 as the lead juvenile detention officer ("JDO"). In the early evening, at Defendant Johnson's direction and under his supervision, numerous Mod 9 juveniles viciously assaulted victim E.R. On or about August 31, 2015, at approximately 11:17 p.m., E.R. was pronounced deceased as a result of injuries suffered during the attack.

---

[1] For purposes of Local Rule 88.9, the Government has conferred with Defendant Johnson's counsel, who oppose the instant motion. However, the parties have agreed to again confer and attempt to resolve the matter prior to any motions hearing date.

[2] The JDC was operated by the Florida Department of Juvenile Justice ("DJJ").

The Government's trial evidence, which will include witness testimony, video, photographs, medical records, JDC reports and records, and other items, will show that Defendant Johnson operated a bounty system in order to help ensure obedience and officer respect. As a result of being held at the JDC, witnessing events at the facility, and in some cases being actual victims of the bounties, Mod 9 juvenile detainees were keenly aware of this bounty culture. Mod 9 juvenile detainees also knew that they would not be punished or disciplined, but in fact rewarded with snacks, honeybuns, and extra recreation time, if they participated.

Youth communicated information about the bounty system to each other by explaining where and how they obtained contraband snack items. They made statements including, "I got it off that fight," and "my dogs ate good off you," and explained, "there's two ways to get snacks, by behaving or doing a favor for an officer like beating up a kid." Officers who participated in the bounty system let juveniles know that they would receive snacks for a fight by telling them "that's off my face," "y'all boys gonna eat good," and letting them know that they had "dropped a package off" to them. By and through this bounty system, Defendant Johnson caused, encouraged, and induced Mod 9 juvenile detainees, in exchange for rewards and privileges, to forcibly assault E.R., which resulted in bodily injury to E.R. and E.R.'s death.

On August 30, 2015, Defendant Johnson and a junior JDO escorted the Mod 9 detainees, including E.R., to dinner at the JDC cafeteria. Consistent with his size, E.R. was toward the middle-front (shortest) of the detainee line. Upon entering the cafeteria, the Mod 9 detainees were immediately seated, individually, at different tables. Thereafter, they were called up in groups of 4-5 to obtain their food trays. Throughout most of the meal, Defendant Johnson was located in a more central location and engaged in walking from table to table while distributing silverware, napkins, and retrieving trays and trash.

During the meal, victim E.R. grabbed an additional food tray, in violation of JDC rules. Thereafter, Defendant Johnson made his way to E.R.'s area of the cafeteria and engaged in a confrontation and argument with E.R. This argument with E.R. was clearly audible to those in the cafeteria, and involved swearing and E.R. acting angrily and disrespectfully toward Defendant Johnson, also in violation of JDC rules. Thereafter E.R. left his seat again, without permission, stopped in the middle of the cafeteria, and engaged in a similarly loud exchange and argument with Defendant Johnson, in violation of JDC rules. When Defendant Johnson instructed E.R. to return to his seat, E.R. swore at Defendant Johnson, in violation of JDC rules.

In response, Defendant Johnson made a series of signals and gestures, such as nodding and tapping his chest and verbal statements to other Mod 9 detainees, including but not limited to: "that's off my face," and "everyone's gonna eat." These signals, gestures, and statements were all well-known JDC-code for detainees to attack E.R. in exchange for rewards and favors.[3] The message quickly circulated among the Mod 9 detainees and they began to prepare by cracking their knuckles, adjusting their shoes, rolling up their sleeves, and making various confirmatory statements, including but not limited to: "woo, woo;" "okay, okay;" "we're ready for this;" "yeah, yeah;" "yes sir;" "10-4;" "we're all gonna eat;" and "we're gonna to slush that boy."

When the meal concluded, the Mod 9 detainees began lining up to leave the cafeteria. E.R., clearly apprehensive and in fear for his safety, got up last from his seat and slowly settled in at the far back of the line, away from all of the other detainees. Defendant Johnson, the other JDO, and the Mod 9 detainees departed the cafeteria. Defendant Johnson was located at the front of the line

---

[3] At trial, various Mod 9 detainees will testify that non-verbal gestures, known as "the nod," and phrases such as "that's off my face" and "everyone's gonna eat" were well-known code utilized by JDC officers to direct detainees to commit assaults in exchange for rewards and privileges and to ensure order and discipline.

and the other JDO was located at the end, immediately next to E.R..  During the walk back to Mod 9, multiple detainees asked Defendant Johnson if they could attack E.R. out in the open.  Defendant Johnson instructed them to wait until they returned to Mod 9 and made statements, including but not limited to: "don't do it now, wait until we get back to the mod;" and "don't do it here, he [E.R.] could run."

At approximately 5:34 p.m., Defendant Johnson, the other JDO, and the detainees arrived at Mod 9.  Defendant Johnson entered into Mod 9 first, grabbed a laundry bin, and walked into a storage closet, as all of the other Mod 9 detainees quickly trickled in and began taking seats in front of the television.  Victim E.R. entered last, grabbed a chair, and immediately began to move away from all of the other detainees toward the wall.

In and around this same time, a Mod 9 detainee (nicknamed "HoneySmack") walked over and stood alone near E.R., and backed up toward the same wall.  Approximately 40 seconds after entering Mod 9, "HoneySmack," initiated the attack on E.R.  Thereafter, numerous other detainees immediately joined in and started punching and kicking E.R., including as E.R. lay defenseless on the ground.

After the other JDO finally placed E.R. into the nearest possible cell for safety, the Mod 9 detainees quickly settled back down into their seats and began watching television in the common area.  When additional JDC officers and supervisors arrived, the Mod 9 juveniles were sent into their cells.  Thereafter, E.R. was escorted out of Mod 9 by other JDC personnel.  As he was walking to the door, E.R. lunged and shouted at Defendant Johnson for causing the attack.  Defendant Johnson responded by verbally taunting E.R.

Approximately four (4) minutes later, once the additional JDC officers and supervisors departed, Defendant Johnson released the remaining Mod 9 detainees from their cells as a reward.

When Defendant Johnson released "HoneySmack" (who started the attack), Defendant Johnson nodded and bumped fists with him.  As Defendant Johnson let them out, the Mod 9 detainees all quickly filed into chairs – celebrating, laughing, and reenacting the attack on E.R. in front of Defendant Johnson – and returned to watching television as if nothing had happened.  Later that night and into the next day, Defendant Johnson also caused various attack participants, including "HoneySmack," to be paid with snacks, including honeybuns.  Some of the youth who received snacks shared them with others.  One youth who participated in the assault but did not receive snacks was told, "hey you missed it last night, we ate good last night. We had a cinnamon roll, we had honey buns."  Other youths who participated in the attack requested the snacks they believed they earned from Defendant Johnson saying, "Johnson, what's good?"

On or about April 30, 2018, Defendant Johnson was charged in a two-count Indictment (DE 3).  Count 1 charges him with conspiracy to violate E.R.'s civil rights, under color of law, which resulted in E.R.'s death, in violation of 18 U.S.C. § 241.  Count 2 charges him with deprivation of E.R.'s civil rights, under color of law, which resulted in bodily injury to E.R. and E.R.'s death, in violation of 18 U.S.C. § 242 (id.).  Trial is now scheduled for April 15, 2019 (DE 50).

II.     **LAW & ARGUMENT**

The Government intends to offer statements by Defendant Johnson's co-conspirators in its case-in-chief pursuant to Federal Rule of Evidence 801(d)(2)(E).  These statements include oral statements made by co-conspirators to both Defendant Johnson and other co-conspirators during and in furtherance of the conspiracy, including statements made to or overheard by Mod 9

detainees and other JDC officers who were privy to the conspiracy and whom the co-conspirators wanted to join the conspiracy. These statements include:

- Statements about JDC officer-directed assaults of other JDC detainees in exchange for rewards and privileges between 2014 to 2015;
- Statements regarding and in response to Defendant Johnson's authorization, inducement, and encouragement of the assault on E.R.; and
- Statements regarding rewards and privileges provided by Defendant Johnson and other JDC officers for the assault of E.R. and/or assaults of other JDC detainees.

Under FRE 801(d)(2)(E), statements made by co-conspirators during the course and in furtherance of the conspiracy are not hearsay. For evidence to be admissible under FRE 801(d)(2)(E), the government must establish, by a preponderance of the evidence, that: 1) a conspiracy existed;[4] 2) that the conspiracy included the maker of the statement and the defendant against whom the statement is being offered; and 3) the statement was made during the course and in furtherance of the conspiracy. United States v. Underwood, 446 F.3d 1340, 1345-46 (11th Cir. 2006). When deciding upon the admissibility of statements pursuant to FRE 801(d)(2)(E), courts may consider, under FRE 104(a), any evidence including hearsay, and are bound only by rules of privilege. United States v. Byrom, 910 F.2d 725, 734-35 (11th Cir. 1990) (citing Bourjaily v. United States, 483 U.S. 171, 178 (1987)).[5]

---

[4] The U.S. Court of Appeals for the Eleventh Circuit identifies the following three (3) factors to determine whether a conspiracy is single or multiple: (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlap of the participants. United States v. Beale, 921 F.2d 1412, 1423 (11th Cir. 1991).

[5] Courts may also "rely on information provided by the co-conspirator's proffered statement as well as independent external evidence" to determine whether the above elements are met. United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002).

"[T]he conspiracy that forms the basis for admitting a co-conspirator's out of court statements need not be the same conspiracy for which the defendant is charged." United States v. Bowe, 221 F.3d 1183, 1193 (11th Cir. 2000). Moreover, "approximate dates in an indictment are not controlling" in determining whether a statement was made in furtherance of a conspiracy. United States v. Lyon, 959 F.2d 701, 705 (8th Cir. 1992) (citing United States v. Crocker, 788 F.2d 802, 805 (1st Cir. 1986)). "A co-conspirator's declaration made in the course and in furtherance of a conspiracy is admissible against a co-conspirator, even one who may have joined the conspiracy *after* the statement was made." United States v. Reeves, 742 F.3d 487, 503 (11th Cir. 2014) (citing United States v. Tombrello, 666 F.2d 485, 491 (11th Cir. 1982)); see also United States v. Lampley, 68 F.3d 1296, 1300-01 (11th Cir. 1995) (citations omitted) (emphasis added).

The Government is also not required prove that a witness who heard the statement and later testified about it was, in fact, a member of the conspiracy. "Statements made to solicit membership or participation in the conspiracy and statements explaining the conspiracy to a new member are made in furtherance of the conspiracy." Miles, 290 F.3d at 1351; see also United States v. Wright, 343 F.3d 849 (6th Cir. 2003) (FRE 801(d)(2)(E) statement need not be made to a co-conspirator); United States v. Galindo, 254 F. App'x 391, 398 (5th Cir. 2007) (noting that language of FRE 801(d)(2)(E) "makes clear" that a declarant's statement need not be made to a co-conspirator, and noting that "it is enough that the declarant . . . was [the defendant's] co-conspirator when the statement was made."). The U.S. Court of Appeals for the Eleventh Circuit also applies a liberal standard in examining whether a statement was made in furtherance of a conspiracy. United States v. Harris, 886 F.3d 1120, 1131 (11th Cir. 2018); United States v. Thompson, 976 F.2d 666, 670 (11th Cir. 1992).

At trial, the statements of various Mod 9 detainees, Defendant Johnson's co-conspirators, will demonstrate that they: 1) were aware of the JDC bounty system; 2) agreed to participate and assault E.R. in order to obtain rewards and privileges from Defendant Johnson; and 3) encouraged, solicited, and rewarded the other Mod 9 detainees for participating in the attack.  In response to Defendant Johnson's verbal and non-verbal directive to attack E.R., various Mod 9 detainees began to prepare by cracking their knuckles, adjusting their shoes, rolling up their sleeves, and making statements such as: "woo, woo;" "okay, okay;" "we're ready for this;" "yeah, yeah;" "yes sir;" "10-4;" "we're all gonna eat;" and "we're gonna to slush that boy."  These co-conspirator statements were also clearly made for the purpose of further circulating Defendant Johnson's directive to assault E.R. and encouraging others to join the attack.

Additionally, the Government's trial evidence will establish that various Mod 9 detainees verbally directed others to follow Defendant Johnson's guidance about when and where to assault E.R., that is, to wait until everyone returned to Mod 9 and not attack E.R. in the cafeteria or out in the open.  Later, Mod 9 assault participants shared the snacks they obtained for taking part in the assault and explained to other Mod 9 detainees why they had received the snacks.  These statements all furthered the objectives of the conspiracy by ensuring that the assault was carried out as Defendant Johnson directed, and that Mod 9 detainees were rewarded, and not punished, for their participation.

Accordingly, the above-described statements of Defendant Johnson's co-conspirators are admissible under FRE 801(d)(2)(E) and should be permitted at trial.

### III.  CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court admit the above-described statements under FRE 801(d)(2)(E).

<div style="display:flex">

Respectfully submitted,

</div>

| | |
|---|---|
| ARIANA FAJARDO ORSHAN<br>UNITED STATES ATTORNEY | ERIC S. DREIBAND<br>ASSISTANT ATTORNEY GENERAL |
| *s/ Sean T. McLaughlin*<br>SEAN T. McLAUGHLIN<br>Assistant United States Attorney<br>Court ID No. A5501121<br>99 N.E. 4th Street, 8th Floor<br>Miami, Florida 33172<br>Tel: (305) 961-9013<br>sean.mclaughlin@usdoj.gov | *s/ Samantha Trepel*<br>SAMANTHA TREPEL<br>Trial Attorney, Civil Rights Division<br>Court ID No. A5501689<br>950 Pennsylvania Avenue NW, PHB<br>Washington, DC  20530<br>Tel: (202) 305-3204<br>samantha.trepel@usdoj.gov |

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 4, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/ Samantha Trepel*
SAMANTHA TREPEL
Trial Attorney

*s/ Sean T. McLaughlin*
SEAN T. McLAUGHLIN
Assistant United States Attorney