UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **18-20337-CR-ALTONAGA**

**UNITED STATES OF AMERICA**

vs.

**ANTWAN LENARD JOHNSON,**

      **Defendant.**
_____/

### GOVERNMENT MOTION IN LIMINE TO EXCLUDE EVIDENCE OF VICTIM & WITNESSES' BAD CHARACTER AND CONDUCT

The United States of America, through its undersigned attorneys, hereby files this motion *in limine* to exclude evidence of the victim's bad character and conduct, and to exclude the prior convictions and other non-relevant misconduct of former juvenile detainee witnesses.[1]

**I.**  **FACTUAL & PROCEDURAL SUMMARY**

On or about August 28, 2015, E.R., a seventeen (17) year-old male, arrived at the Miami-Dade Regional Juvenile Detention Center (hereinafter "the JDC") and was assigned to Module 9 ("Mod 9") as a pre-trial detainee. The JDC is operated by the Florida Department of Juvenile Justice ("DJJ") and is a secure detention facility that serves youth temporarily detained by various courts pending adjudication, disposition, or placement in a commitment facility. JDC detainees receive hygiene, meals, school, structured physical and educational activities, and transportation to scheduled court appearances. JDC detainees may be confined for up to 21 days; however, those who violate court ordered sanctions may be detained longer.

---

[1] For purposes of Local Rule 88.9, the Government has conferred with Defendant Johnson's counsel, who oppose the instant motion. However, the parties have agreed to again confer and attempt to resolve the matter prior to any motions hearing date.

On August 30, 2015, Defendant Johnson, a JDC employee since 2007, was assigned to work the 3-11 p.m. shift in Mod 9 as the lead juvenile detention officer ("JDO"). In the early evening, at Defendant Johnson's direction and under his supervision, numerous Mod 9 juveniles viciously assaulted victim E.R. On or about August 31, 2015, at approximately 11:17 p.m., E.R. was pronounced deceased as a result of injuries suffered during the attack.

On or about April 30, 2018, Defendant Johnson was charged in a two-count Indictment (DE 3). Count 1 charges him with conspiracy to violate E.R.'s civil rights, under color of law, which resulted in E.R.'s death, in violation of 18 U.S.C. § 241. Count 2 charges him with deprivation of E.R.'s civil rights, under color of law, which resulted in bodily injury to E.R. and E.R.'s death, in violation of 18 U.S.C. § 242 (id.). Trial is now scheduled for April 15, 2019 (DE 50).

## II.    LAW & ARGUMENT

For the reasons set forth below, this Court should exclude evidence of, and reference to, victim E.R.'s character and specific instances of prior bad conduct. On August 30, 2015, E.R. was seventeen (17) years old and following his arrest for robbery with a firearm,[2] had been at the JDC for only three (3) days. Based on a juvenile records review, E.R. appears to have been previously adjudicated delinquent and committed to various DJJ facilities for varying lengths of time between July 2013 and July 2015, on misdemeanor charges including larceny/petit theft, disorderly conduct, and battery. He was also adjudicated delinquent and committed to the DJJ on the felony charge of battery on a law enforcement officer. Additionally, E.R.'s criminal history included arrests on other charges, including marijuana possession, burglary, and smuggling contraband into juvenile facility, for which he was not adjudicated delinquent.

---

[2] E.R. was never adjudicated delinquent for this charge.

On or about August 28, 2015, when E.R. returned to the Miami-Dade JDC, an employee noted on a screening tool that E.R. should be referred for further assessment for aggression, presumably based on the nature of his pending charges. However, no additional information was provided, and E.R. never had the opportunity for further assessment. At the time of his death, E.R. was projected to be released back into the custody of his foster parent on September 17, 2015.

Possible trial witnesses, such as current or former JDC employees, may have knowledge about E.R.'s behavior and conduct. Any admission of evidence relating to E.R.'s "aggressive" temperament and his juvenile criminal history, including both his adjudicated and non-adjudicated charges, would be unduly prejudicial and improper character evidence under Federal Rules of Evidence 403, 404(a)-(b), and 405(a), and should be excluded.

### A. Victim E.R.'s Character for Truthfulness & Aggression Is Inadmissible Under FRE 404(a).

Defendants may not introduce evidence of a victim's character other than evidence that relates to a "pertinent trait of character." FED. R. EVID. 404(a)(2). A person's character for truthfulness is only subject to attack if he or she actually becomes a witness. Unless a person testifies, their credibility is not relevant.

E.R. will not testify at trial and his character for truthfulness is therefore wholly irrelevant. Additionally, only one of E.R.'s adjudicated offenses might plausibly be admissible pursuant to FRE 609 – battery on a law enforcement officer. Defendant Johnson should be precluded from attacking E.R.'s character for truthfulness by introducing evidence of this conviction or any of E.R.'s arrest and criminal history. See, e.g., Old Chief v. United States, 519 U.S. 172, 176 n.2 (1997) (explaining prior convictions may not be admitted for impeachment if subject does not

3

testify); United States v. Ratliff, 346 F. App'x 473, 475 (11th Cir. 2009) (prior convictions are admissible to impeach a testifying witness's character for truthfulness).

Likewise, any evidence of E.R.'s purported general character for aggression or violence is not pertinent or admissible. Such a trait would only be pertinent and admissible if Defendant Johnson attempted to argue that the Mod 9 detainees who attacked E.R. were acting in self-defense, and E.R. was the aggressor. However, video evidence and witness testimony all make clear that there is no logical or factual basis for such a claim. As E.R. presented no threat to Defendant Johnson or any Mod 9 detainee at the time he was assaulted, any evidence of E.R.'s character for violence or aggressiveness is not pertinent, and is therefore inadmissible under FRE 404(a).

### B. Victim E.R.'s Bad Acts Are Inadmissible Under FRE 404(b).

Rule 404(b) specifically precludes the admission of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b). The rule only allows the introduction of such evidence when it is offered "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Here, E.R.'s prior juvenile adjudications and bad conduct, including any alleged character for aggressiveness, disobedience, or disrespect, do not fall within any of the exceptions to FRE 404(b)'s general ban on prior bad acts. Therefore, E.R.'s criminal history and prior bad acts are all irrelevant and inadmissible.

### C. Victim E.R.'s Bad Acts Are Inadmissible Under FRE 403.

To the extent that any evidence regarding E.R.'s prior bad acts or character is otherwise admissible, it should be excluded under FRE 403. Under FRE 403's balancing test, evidence of a pertinent character trait of a victim must be excluded if its probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury."

FED. R. EVID. 403.  Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Ad. Comm. Note. Character evidence relating to a victim is particularly susceptible to these dangers because of the potential that such evidence will be used simply to tarnish a victim by suggesting a propensity to commit bad acts, thus encouraging jury nullification.  See MCCORMICK ON EVIDENCE § 193 at 572 (Cleary ed. 1984) (explaining that character evidence relating to a victim is disfavored because "[l]earning of the victim's bad character could lead the jury to think the victim merely 'got what he deserved' and to acquit for that reason.").

E.R. is the victim in this case.  As noted above, there is no credible evidence, video, testimonial, or otherwise, that the Mod 9 detainees who attacked E.R. were acting in self-defense, or that E.R. was the aggressor.  Any evidence relating to his prior misconduct, alleged or otherwise, including his criminal history and any efforts by the defense to portray him as aggressive and violent, is entirely irrelevant to whether or not Defendant Johnson committed the charged crimes and thus should also be excluded under FRE 403.  The nominal probative value of such evidence is far outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Any such evidence would also only serve to improperly appeal to juror emotion and make the jury dislike E.R. and believe his assault and death were somehow deserved.

        **D.**        **Mod 9 Witness Convictions & Other Misconduct Are Also Inadmissible.**

Other than as set forth below, Defendant Johnson should also not be permitted to elicit any juvenile criminal histories or adjudications for Mod 9 detainee witnesses.  As the charges in this case arose from the assault on E.R. at the JDC, many of the anticipated witnesses in this case have various juvenile arrests and adjudications on their records and have completed multiple stays in DJJ custody.  Others have since incurred criminal histories as adults.

Inquiry into the existence of a juvenile or adult arrest or charge is inadmissible to impeach under FRE 608(b). As the Supreme Court has explained, an "[a]rrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty." United States v. Michelson, 335 U.S. 469, 482 (1948). Thus, any Mod 9 detainee's prior juvenile and adult court appearances, pending charges, or arrests are not admissible evidence.

While the admissibility of a witness's adult convictions are governed by FRE 609(a), juvenile adjudications are admissible only where an adult's conviction for the same offense would be admissible to attack that adult's credibility and "admitting the evidence is necessary to fairly determine guilt or innocence." FED. R. EVID. 609(d); see also United States v. Decker, 543 F.2d 1102, 1105 (5th Cir. 1976) (no error in prohibiting defendants from cross examining government witness regarding his juvenile delinquency adjudication where there was no finding that the admission was "'necessary for a fair determination of the issue of guilt or innocence'").

At trial, failing to explain to the jury why a Mod 9 witness was at the JDC during August 2015 might lead them to fear the worst. In the absence of a pre-trial stipulation with the defense, the Government's intends to offer limited testimony regarding the reason each witness was detained at the JDC during August 2015, and whether they had previously been detained at the JDC. Beyond that limited information, any further detail about a witness's juvenile adjudications is irrelevant. The charged offenses turn on what happened to E.R. on August 30, 2015, at Defendant Johnson's direction and under his supervision, not on any specific criminal acts a juvenile witness may have committed prior to arriving at the JDC.

Mod 9 witnesses may also have histories of behavioral issues generally and other misconduct committed inside and outside of the JDC. This includes information gathered from

the DJJ, the Miami-Dade County Public Schools, and the Department of Children and Families ("DCF"). These files contain hearsay statements and unsubstantiated allegations about these potential witnesses. For example, one DCF file states that a possible Mod 9 witness "has major behavioral issues," and a history of truancy, smoking marijuana, anger management issues, and stealing things both from his parents and outside the home. The same juvenile's educational file contains reports alleging that he was disruptive, disrespectful, and frequently absent. Potential defense witnesses, such as current or former DJJ employees, may also have more detailed knowledge about former juvenile witnesses' behavior and conduct while at the JDC.

As with juvenile criminal histories, absent certain narrow exceptions discussed below, evidence of these prior instances of misbehavior are irrelevant, unduly prejudicial, and inadmissible under FRE 401-403. Nonetheless, the Government will elicit witness testimony that Defendant Johnson induced, encouraged, and caused Mod 9 detainees to assault other detainees, including E.R., in exchange for rewards and privileges such as extra recreational time and snacks. Evidence about prior youth-on-youth assaults at the JDC is relevant to establishing that these Mod 9 witnesses shared a common knowledge, language, and understanding with Defendant Johnson about these assaults and the JDC bounty culture. Understandably, Defendant Johnson will likely seek to cross-examine these witnesses about JDC assaults in an effort to demonstrate the youths were acting without the inducement or encouragement of himself and/or other JDC officers. Other than for these clearly relevant, limited, and focused purposes, any general evidence seeking to demonstrate that Mod 9 witnesses had bad character or a propensity to commit bad acts should be excluded. Accordingly, other than participation in prior assaults at the JDC, this Court should exclude any references to Mod 9 witnesses' juvenile adjudications and misconduct.

## IV. CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court exclude: 1) evidence of victim E.R.'s prior bad character, conduct, and criminal history; and 2) juvenile convictions and other misconduct of Mod 9 witnesses, other than prior participation in assaults at the JDC.

Respectfully submitted,

| | |
|---|---|
| ARIANA FAJARDO ORSHAN | ERIC S. DREIBAND |
| UNITED STATES ATTORNEY | ASSISTANT ATTORNEY GENERAL |
| | |
| *s/ Sean T. McLaughlin* | *s/ Samantha Trepel* |
| SEAN T. McLAUGHLIN | SAMANTHA TREPEL |
| Assistant United States Attorney | Trial Attorney, Civil Rights Division |
| Court ID No. A5501121 | Court ID No. A5501689 |
| 99 N.E. 4th Street, 8th Floor | 950 Pennsylvania Avenue NW, PHB |
| Miami, Florida 33172 | Washington, DC 20530 |
| Tel: (305) 961-9013 | Tel: (202) 305-3204 |
| sean.mclaughlin@usdoj.gov | samantha.trepel@usdoj.gov |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 4, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/ Samantha Trepel*
SAMANTHA TREPEL
Trial Attorney

*s/ Sean T. McLaughlin*
SEAN T. McLAUGHLIN
Assistant United States Attorney