UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **18-20337-CR-ALTONAGA**

UNITED STATES OF AMERICA

vs.

ANTWAN LENARD JOHNSON,

    Defendant.
_____/

## GOVERNMENT MOTION IN LIMINE TO EXCLUDE DJJ-OIG & MIAMI-DADE SAO INVESTIGATIVE REPORTS, MEMORANDUMS, FINDINGS, ANALYSES & CONCLUSIONS

The United States of America, by and through the undersigned Assistant United States Attorney, hereby respectfully moves *in limine* for a pre-trial order excluding prior Florida Department of Juvenile Justice Office of Inspector General ("DJJ-OIG") and Miami-Dade State Attorney's Office ("Miami-Dade SAO") investigative reports, memorandums, findings, analyses, and conclusions.[1]  Because these matters are irrelevant, unduly prejudicial, and inadmissible hearsay, they should be excluded under FRE 401-403 and 801-802.

I. **PROCEDURAL & FACTUAL BACKGROUND**

On or about August 28, 2015, E.R., a seventeen (17) year-old male, arrived at the for the Miami-Dade Regional Juvenile Detention Center (hereinafter "the JDC") and was assigned to Module 9 ("Mod 9") as a pre-trial detainee.[2]  On August 30, 2015, Defendant Johnson, a JDC employee since 2007, was assigned to work the 3-11 p.m. shift in Mod 9 as the lead juvenile

---

[1] For purposes of Local Rule 88.9, the Government has conferred with Defendant Johnson's counsel, who oppose the instant motion.  However, the parties have agreed to again confer and attempt to resolve the matter prior to any motions hearing date.

[2] The JDC was operated by the Florida Department of Juvenile Justice ("DJJ").

1

detention officer ("JDO"). In the early evening, at Defendant Johnson's direction and under his supervision, numerous Mod 9 detainees viciously assaulted victim E.R. On or about August 31, 2015, at approximately 11:17 p.m., E.R. was pronounced deceased as a result of injuries suffered during the attack.

On or about April 30, 2018, Defendant Johnson was charged in a two-count Indictment (DE 3). Counts 1 charges him with conspiracy to violate E.R.'s civil rights, under color of law, which resulted in E.R.'s death, in violation of 18 U.S.C. § 241. Count 2 charges him with deprivation of E.R.'s civil rights, under color of law, which resulted in bodily injury to E.R. and E.R.'s death, in violation of 18 U.S.C. § 242 (id.). Trial is now scheduled for April 15, 2019 (DE 50).

## II.    PRIOR DJJ OIG & MIAMI-DADE SAO INVESTIGATIONS

### A.    DJJ-OIG Investigation Regarding JDC Bounty Culture

Following E.R.'s death, the DJJ-OIG initiated an investigation into JDC bounty culture allegations. This investigation included reviews of JDC reports and records and interviews with approximately 23 individuals, which included parents, reporters, JDC employees, and JDC detainees.[3] This DJJ-OIG investigation not only included E.R.'s death, but other incidents and allegations.

On or about January 11, 2016, the DJJ-OIG issued a 14-page report (IG #15-0087) detailing its findings. Citing a lack of witness and documentary corroboration, the DJJ-OIG concluded that "there was insufficient evidence to support or refute the allegation."

---

[3] Only one (1) Mod 9 detainee was interviewed pursuant to the DJJ-OIG bounty-culture investigation.

### B.     DJJ-OIG Investigation Regarding E.R.'s Death

The DJJ-OIG also initiated a more narrow investigation into the circumstances surrounding E.R's death.  This investigation focused on allegations involving: JDC policy violations; improper supervision of the Mod 9 detainees by JDOs, including Defendant Johnson and JDC supervisors; medical neglect pertaining to E.R. after the attack; and improper conduct by JDC employees and supervisors regarding E.R.'s medical care at the JDC after the attack. The investigation included reviews of various JDC reports, records and video footage.  It also involved interviews of various JDC employees, including Defendant Johnson, but did not include any interviews with the Mod 9 detainees.

On or about April 4, 2016, the DJJ-OIG issued a 66-page report (IG #15-0079) detailing its findings.  As a result of this investigation, Defendant Johnson remained employed at the JDC.

### C.     Miami-Dade SAO Homicide Investigation Regarding E.R.'s Death

On or about September 1, 2015, the Miami-Dade SAO, working with the Miami-Dade Police Department ("MDPD"), initiated a criminal investigation into E.R.'s beating and death. The Miami-Dade SAO investigation included, among other matters: 1) interviews with the 19 remaining Mod 9 detainees,[4] Defendant Johnson, and other JDC employees; 2) reviews of JDC reports and records; 3) reviews of medical and autopsy records; and 4) reviews of JDC video footage.

---

[4] The Mod 9 detainee interviews were all conducted at the JDC on the day after E.R.'s death: September 1, 2015.  Certain Mod 9 detainees declined to speak and invoked Miranda, others waived Miranda but provided vague, limited details about the attack.  Only one (1) detainee, interviewed at approximately 8:15 p.m., informed MDPD detectives that Defendant Johnson directed the attack on E.R.  However, MDPD detectives did not ask this detainee any additional questions about Defendant Johnson's involvement, nor did they attempt to re-interview any other Mod 9 detainee at the JDC about Defendant Johnson's role.  Instead, ten (10) days later, MDPD detectives conducted a cursory follow-up interview with Defendant Johnson, cited the Mod 9 detainee by name, and asked Defendant Johnson about the allegation.  Not surprisingly, Defendant Johnson denied it.

On or about January 19, 2017, the Miami-Dade SAO issued a 14-page memorandum detailing its decision, based on insufficient evidence, to not pursue charges against any of the Mod 19 detainees or JDC employees, including Defendant Johnson.  The charges that the Miami-Dade SAO contemplated were: 1) Aggravated Manslaughter on Person Less than 18 years old (FLA. STAT. § 782.07(3)); 2) First Degree Premeditated Murder (FLA. STAT. § 782.04(1)); 3) Second Degree Murder (FLA. STAT. § 782.04(2)); 4) Third Degree Murder (FLA. STAT. § 782.04(4)); 5) Battery on a Detainee (FLA. STAT. § 782.082); and 6) Felony Battery (FLA. STAT. § 782.041).  Citing witness concerns, poor JDC record keeping and video footage, and possible identification and medical causation issues, the Miami-Dade SAO concluded that there was insufficient evidence to charge anyone with the above-listed crimes.

### D.     Miami-Dade SAO Investigation Regarding JDC Bounty Culture

Following E.R.'s death, and ensuing media coverage throughout 2015, the Miami-Dade SAO also initiated an investigation into JDC bounty culture allegations.  This investigation included reviews of earlier DJJ-OIG findings and involved interviews of approximately 36 current and former JDC detainees, including various other JDC employees and witnesses.[5]  The investigation not only included E.R.'s death, but other incidents and allegations.

On or about January 23, 2017, the Miami-Dade SAO issued a 6-page memorandum detailing its decision, based on insufficient evidence, not to pursue charges against anyone employed at the JDC, including Defendant Johnson.  Based on the sheer number and similarity of JDC bounty culture allegations, the Miami-Dade SAO noted that the evidence "seems to suggest that some JDC staff members likely engaged in the practice of offering honey buns or other food as a reward to youth detainees to carry out physical attacks as a means of punishment

---

[5] The same (1) Mod 9 detainee was interviewed in both the DJJ-OIG and Miami-Dade SAO bounty-culture investigations.

4

for exhibiting unruly or offense behavior." However, citing witness and corroboration concerns and burden of proof issues, the Miami-Dade SAO concluded that the JDC bounty culture allegations in general, including those directly relating to E.R.'s death, could not be proved beyond a reasonable doubt.

### III.   LAW & ARGUMENT

Relevant evidence is evidence having any tendency to make the existence of a consequential fact more probable or less probable. See FED. R. EVID. 401. To be relevant: "(1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." United States v. Glasser, 773 F.2d 1553, 1559 n.4 (11th Cir. 1985). Upon failure to meet these relevancy requirements, Federal Rule of Evidence 402 deems the evidence "irrelevant" and "not admissible." FED. R. EVID. 402. Federal Rule of Evidence 403 further provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities." Id., Advisory Committee Notes on 1972 Proposed Rules.

"A judge and jury would face difficulties if forced to navigate through a record muddled between intersecting and partially overlapping pieces of evidence presented during the investigation and the trial, submitted under differing evidentiary standards." Lewis v. City of Chicago Police Dep't, 590 F.3d 427, 442 (7th Cir. 2009) (upholding district court's exclusion of evidence relating to prior EEOC and city internal investigations under FRE 403); see also, In re 650 Fifth Ave. & Related Props., 2017 U.S. Dist. LEXIS 75891, at *74-75 (S.D.N.Y., May 17,

2017) (excluding evidence that defendants were previously subject to various investigations that did not result in criminal charges as irrelevant and unduly prejudicial under FRE 401-403); Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n., 137 F. Supp. 2d 910, 913-14 (W.D. Mich. Apr. 6, 2001) (excluding records, testimony, and information relating to various, prior investigations, with differing factual and legal bases, as irrelevant under FRE 401-402).

Compared to the Miami-Dade SAO and DJJ-OIG investigations, the Government's federal civil rights investigation regarding Defendant Johnson was conducted in a substantially different manner, uncovered and examined new and different evidence, and pertained to differing statutes and elements.  Testimony and evidence relating to the Miami-SAO's decision to not pursue charges against Defendant Johnson or the JDC bounty culture, including its legal and factual analyses in reaching its conclusions, is wholly irrelevant to the instant case and should be excluded under FRE 401-403.  Likewise, testimony and evidence relating to the DJJ-OIG's investigative findings, including its legal and factual analyses in reaching its conclusions, regarding the JDC bounty culture and the circumstances surrounding E.R.'s death are irrelevant and should excluded under FRE 401-403.  Any Miami-Dade SAO and DJJ-OIG written reports and memorandums are also inadmissible hearsay under FRE 801-802.[6]

The Miami-Dade SAO and DJJ-OIG investigations did not exculpate Defendant Johnson. Nonetheless, courts have held that even prior acquittals, stemming from the same facts, are irrelevant to a different subsequent trial.  See United States v. Kerley, 643 F.2d 299, 300-01 (5th Cir. 1981) (affirming exclusion of defendant's prior state court acquittal on battery charges arising from the same incident as federal § 242 prosecution as irrelevant and hearsay); see also United States v. Howard, No. 09-11386, 373 F. App'x 21, 24-25 (11th Cir. 2010) (unpub. op.)

---

[6] Understandably, prior statements made by witnesses during these investigations might

(discussing Kerley and holding evidence of a previous acquittal irrelevant and inadmissible, even where the prior trial involved some of the same government witnesses); United States v. Sogbein, No. CR-12-00054-JSW, 2014 U.S. Dist. LEXIS 200215 (N.D. Cal. May 27, 2014) (noting that "evidence relating to prior investigations did not demonstrate that [defendant] was 'cleared' of fraudulent conduct. Rather, that evidence showed only that fraud could not be substantiated and, thus, had minimal probative value").

When examining evidence under FRE 403, "a district court may consider the amount of time it would have taken the parties to present the evidence, how the evidence would affect the focus of the trial, and whether it would have 'diverted the jury's attention from the real issue in the case.'" United States v. Colwell, No. 04-10789, 140 Fed. Appx. 64, 72 (11th Cir. 2006) (unpub. op.) (quoting United States v. Gilliard, 133 F.3d 809, 815-16 (11th Cir. 1998)). Any admission of evidence and testimony regarding Miami-Dade SAO and DJJ-OIG investigative findings and conclusions would invite what FRE 403 was designed to prevent. The Government would need to utilize numerous trial witnesses, and hours of the jury's time, proving and explaining any errors, oversights, and missteps in the Miami-Dade SAO and DJJ-OIG investigations or how other aspects are immaterial to the charged federal crimes. In essence, the Government's case-in-chief would be forced include four (4) different mini-trials about each Miami-Dade SAO and DJJ-OIG investigation and their analyses and findings. Defendant Johnson is on trial, not the Miami-Dade SAO or DJJ-OIG investigations.

Any potential probative value of this evidence is clearly substantially outweighed by dangers of confusing the trial issues, wasting time, misleading the jury, and undue delay. It should all be excluded under FRE 403. See, e.g., Howard, 373 F. App'x at 25 (affirming

---

be grounds for impeachments pursuant to applicable evidentiary rules.

inadmissibility of evidence of prior acquittal under FRE 401 and 403); United States v. Irwin, 787 F.2d 1506, 1517 (11th Cir. 1986) (exclusion of evidence of prior acquittals of alleged co-conspirators was properly excluded under FRE 403); Kerley, 643 F.2d at 300-01 (defendant's prior state court acquittal properly excluded under FRE 403); Lewis, 590 F.3d at 442, In re 650 Fifth Ave., 2017 U.S. Dist. LEXIS 75891, at *74-75. Additionally, the Miami-Dade SAO and DJJ-OIG investigations, including their accompanying reports and memorandums, are inadmissible hearsay under FRE 801-802. See United States v. Kendrick, 682 F.3d 974, 986 (11th Cir. 2012) ("judgments of acquittal are hearsay and do not fall within any exception to the rule against the admission of hearsay evidence"); Irwin, 787 F.2d at 1516-17 (affirming district court's exclusion of references to acquittals of alleged co-conspirators in previous civil rights trial as inadmissible hearsay).

**WHEREFORE,** based on the foregoing, the Government respectfully requests that its motion be granted.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

ERIC S. DREIBAND
ASSISTANT ATTORNEY GENERAL

*s/ Sean T. McLaughlin*
SEAN T. McLAUGHLIN
Assistant United States Attorney
Court ID No. A5501121
99 N.E. 4th Street, 8th Floor
Miami, Florida 33172
Tel: (305) 961-9013
sean.mclaughlin@usdoj.gov

*s/ Samantha Trepel*
SAMANTHA TREPEL
Trial Attorney, Civil Rights Division
Court ID No. A5501689
950 Pennsylvania Avenue NW, PHB
Washington, DC  20530
Tel: (202) 305-3204
samantha.trepel@usdoj.gov

8

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 4, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/ Samantha Trepel*
SAMANTHA TREPEL
Trial Attorney

*s/ Sean T. McLaughlin*
SEAN T. McLAUGHLIN
Assistant United States Attorney
